JiLINDSAY, Judge.
The defendant, Dunlap & Kyle Company, Inc., appeals from a trial court judgment awarding the plaintiff, Parrino Eleven, $10,-106.82 for merchandise taken by defendant that was subject to a floor plan mortgage held by the plaintiff. We affirm the trial court judgment.
FACTS
In the early 1980s, J & J Tire Center of Bastrop constructed a new building to house its business. The construction was financed through the plaintiffs, Sterlington Bank and the Parrino Eleven partnership. J & J Tire executed a promissory note for approximately $120,000 to Parrino Eleven, secured by, among other things, a bulk collateral floor plan mortgage covering the entire inventory of the business. Sterlington Bank also held a collateral floor plan mortgage.
J & J Tire Center purchased a large portion of its inventory from the defendant, Dunlap & Kyle. J & J Tire experienced financial difficulty and in early 1987, Dunlap & Kyle, which was then owed approximately $43,000, refused to extend further credit, requiring cash on delivery for all merchandise sold to J & J. In July, 1987, J & J Tire contacted Dunlap & Kyle and offered to return all merchandise which it had purchased from Dunlap & Kyle, which was located on the business’ premises, for a credit against the amount owed on open account. Dunlap & Kyle agreed and took back from J & J Tire merchandise and inventory valued at approximately $10,000 and allowed a credit for this amount against the sums owed by J & J Tire.
On July 14, 1987, J ¡fe J Tire Center filed for bankruptcy protection under Chapter 7.
In September, 1987, Parrino Eleven filed an adversary |2proceeding in the bankruptcy court, seeking to assert its floor plan mortgage on the inventory taken back by the defendant and seeking to recover the approximately $10,000 credited to J & J Tire, essentially the same claim asserted in the present case. The bankruptcy court declined to accept jurisdiction and dismissed the adversary proceeding without prejudice.
In May, 1988, Sterlington Bank and Parri-no Eleven filed the present suit against Dunlap & Kyle. In their suit, Parrino Eleven and Sterlington Bank asserted that they held bulk collateral floor plan mortgages covering the inventory of J & J Tire, that the defendant did not have a vendor’s lien on the merchandise and that the defendant wrongfully seized the merchandise in the inventory of J & J Tire without judicial process.
Subsequently, the FDIC took over Ster-lington Bank. On June 9, 1992, the FDIC assigned any claims the bank may have had against the defendant to Parrino Eleven.
In September, 1992, Dunlap & Kyle filed exceptions of no right of action, prescription and res judicata, arguing that since J & J Tire filed for bankruptcy, all causes of action rested with the trustee of the bankruptcy estate. The defendant also argued that the plaintiffs cause of action in bankruptcy had prescribed. Dunlap and Kyle further asserted that, because the bankruptcy court dismissed the adversary proceeding, filed by the plaintiff in 1988, the plaintiff was barred by res judicata from raising the same issues in this case. These exceptions appear to have been referred to the merits of the case and were tacitly overruled.
|3After a hearing on the merits, judgment was signed and filed October 22,1993, awarding Parrino Eleven the amount of $10,106.82. In reasons for judgment, the trial court found that the plaintiff had a valid floor plan mortgage on the inventory of the J & J Tire Center and that mortgage was superior to any interest in the inventory that might be claimed by Dunlap & Kyle. The court found that in 1987, J & J Tire contacted Dunlap & Kyle and asked the company to take back a portion of its inventory in exchange for a *1126 credit against its debt. The court found that Dunlap & Kyle agreed, took back the merchandise and gave J & J Tire a credit of $10,106.82. Therefore, the court reasoned, Dunlap & Kyle owed this amount to the plaintiff, whose mortgage interest primed any interest that may have been held by the defendant.
The court went on to find that when the inventory items were removed, they were given to Dunlap & Kyle with express permission and knowledge of J & J Tire. Therefore, the court found there was no wrongful seizure and that damages for wrongful seizure were not warranted. The defendant appealed the trial court judgment.
PEREMPTORY EXCEPTIONS
Dunlap & Kyle argue that the trial court erred in overruling the exceptions of no right of interest in the plaintiff, prescription, and res judicata. The defendant argues that the trustee in bankruptcy was the only proper party to recover property which may have belonged to the debtor’s estate and therefore, the plaintiff had no right of action to assert this claim.
|4The defendant also argues that the prescriptive period for asserting this bankruptcy claim was two years from the date of filing of the petition for bankruptcy or two years from the closing of the case. J & J Tire filed for bankruptcy on July 14, 1987 and the case was closed on September 21, 1990. Therefore, the defendant argues that the cause of action has prescribed.
The defendant further argues that the plaintiffs complaint against the trustee was dismissed and the plaintiff is now barred by res judicata from reasserting its claim in this court. These arguments are meritless.
In September, 1987, the plaintiff filed a complaint in the bankruptcy court against the defendant alleging that the plaintiff held a chattel mortgage covering the inventory of J & J Tire Center. The plaintiff alleged that the defendant took back tires and merchandise sold on open account to J & J Tire that were subject to the plaintiffs chattel mortgage. This is the same claim asserted in the present case.
On January 11, 1988, the bankruptcy court issued an order dismissing the plaintiffs claim against the defendant, without prejudice, because of “lack of jurisdiction of the bankruptcy court as to the claims against Dunlap & Kyle Company, Inc. or alternatively should the court have jurisdiction, this court abstains from hearing the claims against Dunlap & Kyle, Company, Inc.”
28 U.S.C.A. § 1334 provides in pertinent part:
(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
_js(c)(l) Nothing in this section prevents a district court in the interest of justice or in the interest of comity with the State court or respect of State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a ease under title 11.
Although the specific reason for abstention, other than doubts as to the court’s jurisdiction, were not outlined by the bankruptcy court, the plaintiff opines that the bankruptcy court viewed this matter as a dispute between two creditors and that adjudication of the claim by the bankruptcy court would not benefit the bankruptcy estate. For whatever reason, the bankruptcy court had the statutory authority to refuse to adjudicate the plaintiffs claim against the defendant and it chose to exercise that power.
Further, the bankruptcy court specifically provided that the plaintiffs claim was dismissed without prejudice. The record shows that the plaintiff brought its claim in the bankruptcy court and jurisdiction over that claim was rejected. The claim was not rejected on the merits. After dismissal without prejudice by the bankruptcy court, the plaintiff promptly filed the present case in state court, the only action available. There *1127 fore, the defendant’s argument that this action is governed by the prescriptive periods for asserting claims in bankruptcy is inapplicable. The defendant’s exceptions', essentially arguing that this case could only be brought in the bankruptcy court, are merit-less and were correctly rejected by the trial court.
VALIDITY OF COLLATERAL CHATTEL MORTGAGE
The defendant argues that the trial court erred in finding that the plaintiff held a valid collateral floor plan mortgage covering the inventory of J & J Tire Center. The defendant argues “the testimony did not specifically | ^disclose that the inventory was kept at the address shown on the chattel mortgage,” that the restrictive alienation language of the mortgage was not enforced and that the description of the property mortgaged does not include property disposed of by J & J Tire.
At the time of execution of the chattel mortgage covering the inventory of J & J Tire Center, LSA-R.S. 9:5352 read as follows, in pertinent part:
A Every chattel mortgage shall be in writing and the obligation secured thereby shall be described and the exact sum secured thereby shall be stated, or, if the same is to secure future advances, then the maximum amount thereof shall be stated, and there shall also be stated whether the same be payable on demand or what fixed or determinable future time. A chattel mortgage granted on any mass or assemblage of things, including without limitation, stocks of merchandise in retail, wholesale, or manufacturing establishments, permitted by R.S. 9:5351, whether owned at the time of execution of the mortgage or to be acquired thereafter and on such additions as may come from natural increase or otherwise, shall describe the same as all of a particular class or classes or grade or kind or type or species or dimensions or as a stock of merchandise to be kept at a certain location. In all other eases a full description of the property to be mortgaged shall be set forth so that it may be identified and its location shall be stated; provided, that the failure to recite the location of the chattel shall not affect the validity of the mortgage.[1]
The chattel mortgage specifies that it is to apply to “all that mass or assemblages of furniture, fixtures, equipment, merchandise, stock and inventory including tires, rims, batteries, mufflers, shocks and tire repair equipment contained in, or kept or placed on that certain building and premises known as J & J Tire Center of Bastrop, municipal address of 802 North Washington, ^Bastrop, Louisiana.” Mrs. Beverly Kay Davis Young, one of the proprietors of J & J Tire Center, testified that the business opened at another location in 1982, but moved after construction of the new building. She also testified that the new location of the business, financed by the plaintiff, was on North Washington. Therefore, the argument advanced by the defendant, that the testimony did not specifically disclose that the inventory was kept at the address specified in the chattel mortgage, seems to be unsupported by the record.
Further, it is clear from the record that the plaintiff and the defendant were both well aware of the location of the business known as J & J Tire Center. The record does not disclose that there was any confusion regarding the location of the business or the location of the inventory items subject to plaintiffs chattel mortgage. Therefore, the defendant’s argument in this regard is without merit.
The defendant also argues that the chattel mortgage is not valid because the restrictive alienation language of the mortgage was not enforced throughout the duration of the mortgage. The defendant specifically argues that J & J Tire did not keep a separate lock box in which to store the proceeds of sales of goods to be passed along to the plaintiff.[2] The defendant now argues *1128 that, since some parts of the restrictive alienation language of the Igmortgage were not enforced, the plaintiff cannot now seek to invoke the mortgage terms to regain the value of the items in question in this ease. The defendant cites no authority for this proposition. We do not find that there was a failure to enforce any part of the mortgage. This argument is meritless and accordingly is rejected.
Further, the defendant argues that the property returned to it was not specifically described in the chattel mortgage. LSA-R.S. 9:5352 provides that a chattel mortgage shall describe the property in which the security interest is granted and any reasonable description of the property will suffice. The statute further sets forth examples of descriptions that will be deemed reasonable and adequate, including the term “masses and assemblages.” In its brief, the defendant does not set forth what property is not included in the chattel mortgage held by the plaintiff covering “masses and assemblages.” Therefore this argument is without merit.
The defendant also argues that the plaintiff did not have a valid chattel mortgage covering the property returned to the defendant because the terms of the mortgage specify that it is intended “in accordance with LSA-R.S. 9:5351 that the lien of the collateral chattel mortgage shall cease as to all such property disposed of by the mortgagor up to the time of foreclosure.... ” The defendant argues that, because the items at issue in this case were returned to the defendant before institution of the bankruptcy proceedings, J & J Tire Center was within its right to dispose of that property and the mortgage held by the plaintiff is of no effect as to the items returned to the defendant by J & J Tire Center.
|9We note that, while the description of the property mortgaged specifies that “the collateral chattel mortgage shall cease as to all such property disposed of by the mortgagor up to the time of foreclosure,” the language in the body of the mortgage specifies that, regarding property described in the mortgage, “the lien of the mortgage shall cease as to each item of inventory disposed of by the Mortgagor in the ordinary course of business up to the time of foreclosure....” The mortgage also specifies that the described property shall remain in the mortgagor’s possession for the purpose of storing and exhibiting same for retail sale in the ordinary course of business. The transfer of this property was not made in the “ordinary course of business.” Further, our reading of LSA-R.S. 9:5351, in light of the facts contained in this record, indicates that the “disposal” of property contemplated in the statute is that which would not be in derogation of the interest or rights of the plaintiff. Therefore, we reject the defendant’s argument that J & J Tire had the right to return items to Dunlap & Kyle without regard for and in derogation of the plaintiffs chattel mortgage.
SEIZURE
The defendant argues that the trial court erred in finding that the plaintiff is entitled to damages against the defendant. Dunlap & Kyle contend that the claim for damages is based upon the assumption that there was a seizure and in this case, the trial court found that there was no seizure. J & J Tire voluntarily surrendered the items in question, asking Dunlap & Kyle to pick up old items of inventory that had not sold. Because there was nojipseizure, the defendant contends the plaintiff is not entitled to recovery. This argument is meritless.
Although in its original pleadings the plaintiff did seek to recover damages for the wrongful seizure of the items from the inventory of J & J Tire, the plaintiff also sought to assert a superior security interest in the items returned to the defendant. The trial court found that there was no seizure of the items in question. However, the court did find that the plaintiff had a valid and superi- or security interest in the returned items.
*1129 Based upon this security interest, the trial court awarded the plaintiff the value of the items. The defendant has failed to demonstrate the necessity to make a showing of a seizure in order for the plaintiff to recover based upon a superior security interest in the items returned by J & J Tire. The defendant’s argument in this regard is without merit.
PROOF OF DEBT
The defendant argues that the trial court erred in finding that the plaintiff was damaged by the return of the inventory items. Although the defendant acknowledges that there was an initial debt owed to the plaintiff by J & J Tire, the defendant contends that there has been no showing that J & J Tire was still indebted to the plaintiff at the time of trial. The plaintiff contends that, without such a showing, there is no evidence that the plaintiff was damaged by the return of inventory items to Dunlap & Kyle.
This argument is not supported by the record. The testimony of Mrs. Young clearly shows that she and Thomas Jerry Young, d/b/a J & J Tire Center executed a collateral floor plan chattel mortgage in the amount of _]n$150,000, a chattel mortgage note, a collateral pledge agreement and a promissory note in the amount of $126,000. These documents were admitted into evidence. Mrs. Young further testified that at the time of the filing of bankruptcy in 1987, J & J Tire Center still owed the plaintiff approximately $121,000. This evidence was not rebutted or refuted, nor were any credits shown. Accordingly, we find that the record does, indeed, contain proof of the indebtedness owed to the plaintiff by J & J Tire Center. The defendant’s argument in this regard is without merit.
FAIR MARKET VALUE
Upon return of the items in question, the defendant allowed J & J Tire a credit for the amount charged to their account when the items were originally purchased. This amount was the measure of damages awarded by the trial court. However, the defendant contends that many of the items returned were old, discontinued items . and the total fair market value of the items returned was $4,000 to $5,000 rather than approximately $10,000 credited to the J & J Tire account. The defendant contends that the plaintiffs damages should be determined by the fair market value of the items and not the credit given to J & J Tire.
The determination of actual damages is a question of fact and the trial court’s findings in this regard will not be reversed on appeal unless' they are manifestly erroneous and have no basis in fact. Aldredge v. Moses, 595 So.2d 379 (La.App. 3d Cir.1992). The proper measure of damages for the loss of inventory that was for sale in the ordinary course of trade is the cost of replacement, without reduction for depreciation. Aldredge v. Moses supra; Peacock's Inc. v. Shreveport Alarm Co., 510 So.2d 387 (La.App.2d Cir.1987, writs denied, 513 So.2d 826, 827, 828 (La.1987).
We reject defendant’s argument. The only proof before this court or the court below of the value of the items returned to Dunlap & Kyle are the credit memos given to J & J Tire, reflecting the amounts credited to J & J’s account for each item returned. The defendant offered no evidence in the trial court as to the “fair market value” of the items in question other than the self-serving statement of its employee that the merchandise was not worth the amount credited to the J & J Tire account. Therefore, we do not find that the trial court abused its discretion in basing the award to the plaintiff on the amount credited to J & J Tire Center for the property subject to the plaintiffs mortgage.
CONCLUSION
For the reasons stated above, we affirm the trial court judgment in favor of the plaintiff, Parrino Eleven, ordering the defendant, Dunlap & Kyle, Company, Inc., to pay plaintiff $10,106.82, representing the value of items subject to the plaintiffs chattel mortgage which were returned to the defendant. Costs in this court and in the court below are assessed to the defendant.
AFFIRMED.

. This statute was amended by Acts 1987, No. 701. However, this chattel mortgage was executed and recorded in 1985, prior to the amendment. Therefore, the statute in effect prior to the amendment governs in this case. See Acts 1987, No. 701 § 2.

. The mortgage requires that the mortgagor may sell the described property in the ordinary course *1128 of business provided that the proceeds be held in trust by the mortgagor for the mortgagee and forthwith paid over to the mortgagee unless otherwise directed in writing. The plaintiff testified that it received payment from J & J Tire during the course of the mortgage. We fail to see that this portion of the mortgage was not enforced.